2006 WY 72

**Raymond D. CUSTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–136.**

Supreme Court of Wyoming.

June 8, 2006.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel; Suzannah B. Gambell, Student Intern. Argument by Ms. Gambell.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; James Michael Causey, Assistant Attorney General; Eric A. Johnson, Director, PAP; Jonathan Haidsiak, Student Director; William Foster, Student Intern; Orintha Karns, Student Intern. Argument by Ms. Karns.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1] Raymond D. Custer pled guilty to one count of possession of marijuana and one count of possession of methamphetamine while reserving the right to appeal the district court's denial of his motion to suppress evidence. He claims the district court should have granted his motion to suppress because he was seized in violation of Article I, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitu-

tion. We conclude Mr. Custer did not properly present his state constitutional argument to the district court and, consequently, we decline to consider it. We agree with the district court's ruling that Mr. Custer's rights under the Fourth Amendment to the United States Constitution were not violated and, therefore, affirm.

## ISSUES

[¶ 2] Mr. Custer articulates the following issues on appeal:

1. Did the trial court err by not suppressing evidence when appellant was seized in violation of Article 1, § 4 of the Wyoming Constitution?

2. Did the trial court err by not suppressing evidence when appellant was seized in violation of Amendment 4 of the United States Constitution?

The State rephrases the issues as:

I. Did the officers' initial contact with appellant amount to a "seizure" for purposes of Article 1, Section 4 of the Wyoming Constitution?

II. Was appellant "seized" for the purposes of the Fourth Amendment before the officers had developed reasonable suspicion?

## FACTS

[¶ 3] At approximately 6:30 p.m. on July 25, 2004, Officer Joseph Baird and Corporal William Wright of the Gillette Police Department were dispatched on a welfare check to investigate a claim that juveniles, between the ages of ten and fourteen, had stolen one of their parent's blood pressure medication. Their investigation led them to a trailer house and Corporal Wright knocked on the door. A man answered the door and appeared shocked and nervous about the presence of the officers. Corporal Wright asked him about the juveniles and he indicated there was a woman in the house who was in charge of one of them. The man went back into the residence to get her. A few minutes later, a woman came to the door. She told the officers she and the man who had answered the door were the only persons at the residence. The officers questioned her about the juveniles and she stated they had been there earlier, but had left the residence and she pointed toward the direction they might have gone. Like the man who had answered door, the woman appeared nervous and evasive.

[¶ 4] The officers left the home and discussed the strange behavior of the man and woman as they returned to their vehicles. They concluded, "there was something possibly criminal going on within the residence. . . ." Shortly thereafter, a different man, who was later identified as Mr. Custer, left the residence. The officers thought this was strange because they had been told there was no one else in the residence. Mr. Custer had a rolled newspaper under his arm which he appeared to be attempting to conceal. He walked across the street and the officers could see a yellow object sticking out from the rolled up newspaper.

[¶ 5] Mr. Custer entered the passenger side of a van parked on the street, shoved the newspaper under the seat, and moved over to the driver's side. Officer Baird approached and knocked on the driver's side window. Mr. Custer did not acknowledge him, but, simply looked straight ahead and held the steering wheel. He appeared very nervous and was sweating. The officer knocked on the window again and Mr. Custer lowered the window approximately three inches. Officer Baird asked Mr. Custer, "what was going on," but Mr. Custer did not answer. Officer Baird then questioned Mr. Custer about the object hidden in the newspaper and Mr. Custer responded saying he couldn't go to jail. He offered to give the officer the object in the newspaper if the officer promised he would not go to jail. Officer Baird indicated he could not make that promise and asked again what was in the newspaper. Mr. Custer replied it was a pornographic magazine. Officer Baird told him possession of pornography, alone, would not result in his arrest.

[¶ 6] Officer Baird asked Mr. Custer to step out of the van and he responded, "I'll get it for you." He was apparently referring to the newspaper parcel. Officer Baird was concerned about Mr. Custer's demeanor and again asked him to exit the vehicle. Mr.

Custer did not comply and instead, reached down and almost dove down into the passenger side of the vehicle and reached under the seat. Officer Baird attempted to open the driver's side door, but it would not open. The officer then moved to the passenger side door, opened it, took Mr. Custer by the arm, and removed him from the vehicle. Officer Baird released Mr. Custer's arm once he was out of the vehicle and Mr. Custer moved to stand by Corporal Wright.

[¶ 7] After Mr. Custer was removed from the vehicle, the van's passenger door stood open, allowing Officer Baird to see a pair of yellow work gloves sticking out of the newspaper. Inside the gloves, the officer saw plastic bags containing a substance which looked like marijuana and glass pipes commonly used to smoke methamphetamine. Officer Baird retrieved the gloves and their contents from the vehicle and placed them on the hood of his patrol car. He talked to Mr. Custer who stated repeatedly he did not want to go jail. Officer Baird asked him about the pipes, and Mr. Custer reached into his pants pocket, produced a plastic bag of methamphetamine and attempted to put it inside the gloves. Mr. Custer was arrested and charged with one count of possession of less than three ounces of marijuana, a third or subsequent offense, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(A) (LexisNexis 2005), and one count of possession of less than three grams of methamphetamine, a third or subsequent offense, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C).

[¶ 8] Mr. Custer filed a motion to suppress the evidence resulting from the seizure claiming he was illegally seized by the officers. The district court held a hearing on his motion and denied it. Mr. Custer subsequently pled guilty to both counts, but reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced him to serve eighteen to forty months of imprisonment on each count to be served consecutively. The sentences were suspended and Mr. Custer was placed on probation for a period of six years. He filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 9] When reviewing a district court's decision on a motion to suppress evidence, we defer to its findings of fact, unless they are clearly erroneous. *Gompf v. State*, 2005 WY 112, ¶ 14, 120 P.3d 980, 984–85 (Wyo.2005). *See also, Hannon v. State*, 2004 WY 8, ¶ 12, 84 P.3d 320, 328 (Wyo.2004); *Gunn v. State*, 2003 WY 24, ¶ 5, 64 P.3d 716, 719 (Wyo.2003). We consider the evidence in the light most favorable to the district court's decision because it is in the best position to " 'assess the witnesses' credibility and make the necessary inferences, deductions, and conclusions therefrom.' " *Gompf*, ¶ 14, 120 P.3d at 985, quoting *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d 1279, 1282 (Wyo.2002). The constitutionality of a particular search or seizure is a question of law which we review *de novo*. *Id*. *See also, Meadows v. State*, 2003 WY 37, ¶ 14, 65 P.3d 33, 36–37 (Wyo.2003).

## DISCUSSION

### A.  State Constitution

[¶ 10] Mr. Custer argues the officers violated his rights under Article 1, § 4 of the Wyoming Constitution. Article 1, § 4 is identical to the Fourth Amendment to the United States Constitution, except the Wyoming provision requires an affidavit to support a warrant. We have concluded in other contexts Article 1, § 4 provides broader protection against unreasonable searches and seizures than the Fourth Amendment. *See, e.g., Vasquez v. State*, 990 P.2d 476 (Wyo. 1999); *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (Wyo.2005). Mr. Custer argues this precedent warrants extension of the constitutional protection against seizure under our state constitution to police/citizen encounters which may be considered consensual under the federal constitution. Relying on our decision in *O'Boyle*, 2005 WY 83, 117 P.3d 401 (Wyo.2005), he maintains his acquiescence to the officers' questions and requests did not amount to valid consent. Thus, he claims he was illegally seized under the Wyoming Constitution when the officers approached and questioned him.

[¶ 11] Mr. Custer's only mention of the state constitution in the district court pro-

ceedings was a citation to Article 1, § 4 in his motion to suppress and his argument at the suppression hearing focused exclusively on the Fourth Amendment to the United States Constitution. A mere reference to a state constitutional provision in the district court is not adequate to justify our review of the issue on appeal. As we explained in *Lindsay v. State*, 2005 WY 34, ¶¶ 16–17, 108 P.3d 852, 856 (Wyo.2005), this Court refuses to consider state constitutional issues presented for the first time on appeal.[1] We stated:

> [W]hen a defendant fails to assert a cogent independent state constitutional based argument before the district court, a defendant fails to preserve such issues for appellate review.

*Lindsay*, ¶ 16, 108 P.3d at 856. *See also, McChesney v. State*, 988 P.2d 1071, 1074, n. 1 (Wyo.1999) (ruling that the defendant's reference to the state constitution, without further discussion of his independent state constitutional claim, was insufficient to justify judicial consideration of the issue).

[¶ 12] A corollary rule also applies when a defendant has entered a conditional guilty plea. *Lindsay*, ¶ 17, 108 P.3d at 856.

> In the same vein, upon addressing the fact that W.R.Cr.P. 11(a)(2) allows a defendant to plead guilty or nolo contendere while reserving the right to seek review on appeal of any specified pretrial motion, we set forth in *Morgan* [*v. State*, 2004 WY 95], ¶ 24, [95 P.3d 802, 808 (Wyo.2004)]:
>> In *Bailey* [*v. State*, 12 P.3d 173, 177 (Wyo.2000)], we ruled that a conditional plea of guilty does not provide carte blanche permission for the appellant to present any and all arguments on appeal. [*Bailey*,] 12 P.3d at 177–78. Instead, the appellant may only raise those issues on appeal which were clearly called to the attention of the district court. *Id.*; see also, *Elder v. Jones*, 608 P.2d 654, 660 (Wyo.1980). In other words, "[w]e will not consider non-juris-

dictional issues on appeal unless they have been raised before the lower court with at least a minimum effort to present a cogent legal argument." *Bailey*, 12 P.3d at 178.

*Id.* Mr. Custer did not properly raise the state constitutional argument in the district court and, consequently, we decline to consider his argument on appeal.

## B. Fourth Amendment to the United States Constitution

[¶ 13] The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Constitutional jurisprudence on the Fourth Amendment generally recognizes three levels or tiers of interaction between police and citizens. *Wilson v. State*, 874 P.2d 215, 219–20 (Wyo.1994); *Collins v. State*, 854 P.2d 688, 691–92 (Wyo.1993). The least intrusive contact between a citizen and police is the consensual encounter which "involves no restraint of liberty and elicits the citizen's voluntary cooperation with non-coercive questioning." *Wilson*, 874 P.2d at 220. The consensual encounter is not a seizure and does not engage the Fourth Amendment. The second tier is the investigatory or *Terry* stop, named after the seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An investigatory detention involves a seizure and, consequently, the protections of the Fourth Amendment are implicated. *Wilson*, 874 P.2d at 220. However, because of its limited nature, a law enforcement officer must show only "the presence of specific and articulable facts and

---

1. This case is different from the situation presented in *Cotton v. State*, 2005 WY 115, 119 P.3d 931 (Wyo.2005) in which we discussed a defendant's constitutional claim on appeal even though he had not argued it to the district court. Our reason for addressing the issue on appeal was the district court had ruled on the applica-

tion of the state constitution even though the defendant had not presented a state constitutional argument and the district court had no obligation to do so. *Cotton*, ¶ 15, 119 P.3d at 934. In the case at bar, neither the district court nor Mr. Custer specifically discussed the state constitution in the motion to suppress proceedings.

rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime" in order to justify the detention. *Id.* The most intrusive encounter between police and a citizen is, of course, an arrest. An arrest "requires justification by probable cause to believe that a person has committed or is committing a crime." *Id.*

[¶ 14] The district court concluded the encounter between Mr. Custer and the officers was consensual until he reached under the seat. At that point, the district court ruled the officers had reasonable suspicion under *Terry* to support an investigative detention. The court stated:

At the minute then that the defendant goes under the seat to retrieve or get whatever it is, at that point in time it appears to me from the testimony that the officer has a valid concern for his safety and the safety of everyone else[ ], and at that point in time it seems to me that the officer did the right thing. You know, he got the defendant out, again, not only for the officer's safety, but, quite frankly, based on the testimony and what I heard here today, for the defendant's safety as well, and that then yields the substances that were seized under the seat.

Given the nature and facts and circumstances of this case, ... I conclude that the initial part of this is consensual. I conclude ... that there wasn't a seizure of this defendant up until the point that he, by his own actions, provided objective criteria for the officer to believe that the officer's safety was at risk. At that point in time the officer acted properly, and from there the seizure was legal. I'm going to deny the motion.

Mr. Custer claims he was actually seized when the officer directed him to exit the vehicle and a seizure at that point was illegal because the officer did not have reasonable suspicion he had committed a crime.

[¶ 15] A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Wilson,* 874 P.2d at 220. The Court judges whether or not a person has been seized by considering the totality of the circumstances. *Id.* at 221. *See also, Collins v. State,* 854 P.2d 688 (Wyo.1993). Thus, the determination of whether a person has been seized depends on the specific facts of the situation. *Id.* In making that judgment, we look to the following criteria identified by the United States Supreme Court in *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), Stewart J., concurring, (footnote omitted and emphasis added):

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See *Terry v. Ohio, supra,* 392 U.S. at 19, n. 16, [88 S.Ct. at 1878, n. 16]; *Dunaway v. New York,* 442 U.S. 200, 207, and n. 6, [99 S.Ct. 2248, 2253, 60 L.Ed.2d 824]; 3 W. LaFave, Search and Seizure 53–55 (1978). In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Wilson,* 874 P.2d at 220. *See also, California v. Hodari D.,* 499 U.S. 621, 624–28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

[¶ 16] In this case, Officer Baird approached Mr. Custer when he was in his vehicle parked on a public street and knocked on the window to get his attention. Mr. Custer did not acknowledge the officer, so he knocked on the window a second time. At that point, Mr. Custer rolled the window down a short way and the officer asked him "what was going on." The officer did not activate the patrol car's lights, display his weapon or block Mr. Custer from driving away in the van.

[¶ 17] As we recognized in *Rice v. State*, 2004 WY 130, ¶ 25, 100 P.3d 371, 379 (Wyo.2004), a seizure does not occur simply when a police officer walks up to a person in a public place and asks a question, provided there is no showing of force or indication the person is restrained from leaving. *See* also, *Innis v. State*, 2003 WY 66, ¶ 17, 69 P.3d 413, 419 (Wyo.2003); *Perry v. State*, 927 P.2d 1158, 1163 (Wyo.1996). This principle is consistent with our ruling in *Gompf*, 2005 WY 112, 120 P.3d 980, where we stated the Fourth Amendment was not implicated when officers approached a person's residence, knocked at the door, and asked questions. Likewise, there was no violation of Mr. Custer's Fourth Amendment rights when Officer Baird approached him and asked questions.

[¶ 18] Mr. Custer claims he was seized when Officer Baird asked him to step out of the vehicle and the officer at that point did not have reasonable suspicion to justify an investigatory detention. The officer did not display his weapon or touch Mr. Custer when he made the request. Mr. Custer did not comply with the officer's request and, instead, responded, "I'll get it for you." He was apparently referring to the newspaper parcel. Officer Baird requested, a second time, that Mr. Custer exit the vehicle. Mr. Custer again ignored the officer's request and reached down under the seat on the passenger side of the vehicle. Officer Baird attempted to open the driver's side door, but could not, so he moved to the passenger side of the vehicle, opened the door, and removed him from the vehicle.

[¶ 19] The fact that an officer asks a person to get out of his vehicle does not, alone, amount to a seizure. *See Innis*, ¶ 17, 69 P.3d at 419. We consider all of the facts and circumstances to determine whether a reasonable person would have felt free to ignore the officer's request and continue on his way. Officer Baird took no action to indicate Mr. Custer could not refuse the request and simply drive away. Furthermore, Mr. Custer's response to Officer Baird's re-quest belies his claim that he was seized because he ignored it and, instead, reached under the passenger seat for the newspaper parcel. As we acknowledged in *Wilson*, 874 P.2d at 220, "a seizure based on a show of authority does not occur unless the subject yields to the authority." *See also, California v. Hodari D.*, 499 U.S. at 624–28, 111 S.Ct. 1547. Based upon our review of the record, none of the district court's findings were clearly erroneous and we agree no seizure occurred during the initial encounter.

[¶ 20] The district court further held that when Mr. Custer went down and reached under the passenger seat, the officer was justified in seizing him in order to remove him from the vehicle.[2] The record also supports that holding. We look to the totality of the circumstances to determine whether the officers had reasonable suspicion to justify an investigative detention of Mr. Custer. The events of the day illustrate an increasing level of suspicion from the two people in the house falsely stating they were the only persons in the residence to Mr. Custer's insistence he could not go to jail. Any of these circumstances, alone, may not have justified a *Terry* stop; however, when the circumstances are taken together with his abrupt movement to reach under the seat, we conclude Officer Baird had reasonable suspicion to believe Mr. Custer had committed or may be committing a crime and appropriately detained him for further investigation. Furthermore, the officer was justified in removing him from the vehicle in order to ensure officer safety. *See, e.g., Fender v. State*, 2003 WY 96, ¶ 17, 74 P.3d 1220, 1227 (Wyo. 2003).

[¶ 21] In summary, the initial encounter between the officers and Mr. Custer was consensual and he was not seized under the Fourth Amendment when Officer Baird asked him to step out of the vehicle. He was, however, seized when Officer Baird pulled him out of the passenger side of the vehicle, but that seizure was justified by reasonable suspicion. Mr. Custer's rights

---

**2.** The district court referred to "probable cause" in its oral ruling, rather than reasonable suspicion. This misstatement of the standard for an investigatory detention did not in any way im-pact the validity of the district court's factual findings or its ruling that Mr. Custer's Fourth Amendment rights were not infringed.

under the Fourth Amendment to the United States Constitution were not violated.

[¶ 22]   Affirmed.