2009 WY 148

**Willie Earl SUTTON, III, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0072.

Supreme Court of Wyoming.

Dec. 9, 2009.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] After conditionally pleading guilty to a controlled substance offense, Mr. Sutton challenges the district court's denial of his motion to suppress evidence discovered during a search of the vehicle he was driving. He maintains that he was unconstitutionally detained for a canine drug sniff. We conclude that the trooper had reasonable suspicion to detain him and affirm.

## ISSUE

[¶ 2] Mr. Sutton states a single issue on appeal:

> Was the continued detention of Mr. Sutton after he refused to consent to a search supported by reasonable suspicion?

The State phrases the issue as:

> Were Appellant's constitutional rights under the Fourth Amendment to the United States Constitution violated, and did the district court err in denying his motion to suppress?

## FACTS

[¶ 3] On March 15, 2007, Mr. Sutton was driving a blue Pontiac car with California license plates eastbound on I–80. Wyoming Highway Patrol Trooper Jeremy Mrsny stopped the vehicle for traveling 80 miles per hour in a 75 miles per hour zone. The stop was video recorded by Trooper Mrsny. Trooper Mrsny approached the car and greeted Mr. Sutton. He noticed some items on the front passenger seat of the car, including large cooking bags and a bottle of No-Doz; two cell phones were located on the center console. Mr. Sutton stated that he was traveling to Denver, Colorado to see his girlfriend who was due to have a baby on March 14, 2007, (the day before the stop). Trooper Mrsny informed him that he had missed the I–25 exit to Denver. Mr. Sutton provided the trooper with a rental agreement for the car and an Illinois driver's license.

[¶ 4] Trooper Mrsny asked Mr. Sutton to accompany him to the patrol car. Reviewing the rental agreement, the trooper noticed that Mr. Sutton had rented the car in San Francisco, California for one day. The rental agreement stated that he had rented the car on March 13, 2007, and the car was due to have been returned to the rental company the day before, March 14, 2007. When asked about the terms of the rental agreement, Mr. Sutton explained that, when he rented the car, he did not know how long he was going to need it so he just rented it for one day but the term could be extended.

[¶ 5] Trooper Mrsny issued a warning to Mr. Sutton and told him he was free to leave. After Mr. Sutton exited the patrol car, the trooper followed him and asked for permission to ask some more questions. Mr. Sutton acquiesced to the additional questioning. Trooper Mrsny asked again about the one-day rental. Mr. Sutton stated that he had originally rented the car just to drive around San Francisco, but had decided at the last minute to travel to Denver and he had called the rental company to make arrangements to extend the rental period. The trooper inquired whether there were illegal drugs in the car, asking about several controlled substances individually, and Mr. Sutton denied having any such contraband. Trooper Mrsny then asked for permission to search the car and Mr. Sutton refused.

[¶ 6] Trooper Mrsny informed Mr. Sutton that he was detaining him for a canine drug sniff. The canine unit arrived approximately twelve minutes later and the dog immediately alerted. The officers searched the trunk, recovering approximately five pounds of marijuana, some packaged in oven cooking bags.

[¶ 7] Mr. Sutton was arrested and charged with one count of possession with intent to deliver marijuana, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(ii) (LexisNexis2009), and one count of felony possession of marijuana in violation of § 35–7–1031(c)(iii) (LexisNexis 2009).[1] Mr. Sutton

---

1. Section 35–7–1031 states in relevant part:
   (a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
   . . . .
   (ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;
   . . . .

   (c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this subsection:
   . . . .
   (iii) And has in his possession any other controlled substance classified in Schedule I, II or III in an amount greater than set forth in paragraph (c)(i) of this section, is guilty of a

filed a motion to suppress the evidence recovered as a result of the search, asserting several different arguments that his detention and the search violated the Fourth Amendment to the United States Constitution. The district court held a hearing and denied the suppression motion. Mr. Sutton then entered into a plea agreement with the State. He pled guilty to possession with intent to deliver marijuana, reserving his right to appeal the denial of his motion to suppress. The district court entered a Judgment and Sentence, but the order did not state that Mr. Sutton's plea was conditional. Mr. Sutton appealed.

■ [¶ 8] After the appeal was already docketed in this Court, Mr. Sutton filed a motion for a *nunc pro tunc* order to correct the Judgment and Sentence because it did not state that his plea was conditional. The district court entered the corrected order, and we granted Mr. Sutton's motion to supplement the record with the Judgment *Nunc Pro Tunc.*[2]

## STANDARD OF REVIEW

■ [¶ 9] We apply the following standard in reviewing a denial of a motion to suppress evidence:

Rulings on the admissibility of evidence are within the sound discretion of the trial court. *Urbigkit v. State,* 2003 WY 57, ¶ 39, 67 P.3d 1207, ¶ 39 (2003). We will not disturb such rulings absent a clear abuse

felony punishable by imprisonment for not more than five (5) years, a fine of not more than ten thousand dollars ($10,000.00), or both[.]

2. The record contains a written plea agreement but it did not state that Mr. Sutton was reserving his right to appeal the denial of his suppression motion. Defense counsel did state at the rearraignment hearing that Mr. Sutton was reserving the right to appeal the denial of his motion to suppress and the district court acknowledged the conditional nature of the plea. Interestingly, the transcript does not indicate that the prosecutor uttered a single word during Mr. Sutton's change of plea hearing, so there was no express State consent to the conditional plea. The parties did not mention the conditional nature of the plea at the sentencing hearing and the original Judgment and Sentence did not properly reflect the conditional plea. However, that error was corrected in the Judgment *Nunc Pro Tunc*.

of discretion. *Id.* An abuse of discretion occurs when it is shown the trial court reasonably could not have concluded as it did. *Hannon v. State,* 2004 WY 8, ¶ 13, 84 P.3d 320, ¶ 13 (2004). Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. *Meek v. State,* 2002 WY 1, ¶ 8, 37 P.3d 1279, ¶ 8 (2002). Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. *Id.* Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo.* *Vasquez v. State,* 990 P.2d 476, 480 (Wyo.1999).

*O'Boyle v. State,* 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (2005). *See also, Flood v. State,* 2007 WY 167, ¶ 10, 169 P.3d 538, 542 (2007).

## DISCUSSION

■ [¶ 10] The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

The procedure employed in this case for entering a conditional plea did not conform with W.R.Cr.P. 11(a)(2) or our decision in *Walters v. State,* 2008 WY 159, 197 P.3d 1273 (Wyo.2008), in that the right to appeal was not initially reserved in writing and the State did not expressly consent to the conditional plea. However, given that the precise issue preserved for appellate review is clear in the record; neither party raised a specific issue challenging the conditional nature of the plea; the purpose of the conditional plea procedures—to ensure that the ruling appealed is dispositive, *Id.,* ¶ 15, 197 P.3d at 1277–78—was unquestionably served here; and the record was corrected to reflect that the plea was conditional, we will exercise our discretion to consider the substantive issue. *Tucker v. State,* 2009 WY 107, ¶ 19, 214 P.3d 236, 242 (Wyo. 2009).

searched, and the persons or things to be seized.

We recognize three tiers of interaction between police and citizens under the Fourth Amendment-consensual encounter, investigatory detention and arrest. *Custer v. State,* 2006 WY 72, ¶ 13, 135 P.3d 620, 624–25 (2006). *See also, Collins v. State,* 854 P.2d 688, 691–92 (Wyo.1993). A traffic stop is analogous to a second tier investigatory detention and is sometimes termed a *Terry* stop.[3] *Barch v. State,* 2004 WY 79, ¶ 7, 92 P.3d 828, 831 (2004). "[A]n investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop ..." *O'Boyle,* ¶ 47, 117 P.3d at 414. The officer may expand the investigative detention beyond the scope of the initial stop only if the traveler consents to the expanded detention or if "there exists an objectively reasonable suspicion that criminal activity has occurred or is occurring." *Id.,* citing *Damato v. State,* 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (2003).

[¶ 11] Mr. Sutton claims that Trooper Mrsny did not have an objectively reasonable suspicion that he was engaged in criminal activity to justify detaining him for the canine sniff. In determining whether an officer had a reasonable suspicion under the Fourth Amendment, we look to the totality of the circumstances and how those circumstances developed during the officer's encounter with the occupant of the vehicle. *See, Flood,* ¶ 23, 169 P.3d at 545.

> The Supreme Court has instructed that we not examine each factor adding up to reasonable suspicion individually, but that we evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct. In [*United States v.*] *Arvizu,* [534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)], the Court rejected what is called a "divide-and-conquer analysis," noting that reasonable suspicion may exist even if "each observation" is "susceptible to an innocent explanation." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744.

*Garvin v. State,* 2007 WY 190, ¶ 16, 172 P.3d 725, 729–30 (2007), quoting *United States v. Guerrero,* 472 F.3d 784, 787 (10th Cir.2007).

In considering the totality of the circumstances, "[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." *Damato,* ¶ 16, 64 P.3d at 707, quoting *United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997).

[¶ 12] The district court ruled that the trooper had reasonable suspicion to detain Mr. Sutton:

> In this case, as in many, if each item [of evidence] is viewed in isolation, as a sort of "snapshot" without reference to those before and after, they each in turn seem insignificant. (Though one exception to this may be the presence of the large cooking bags in the front seat of the car, as no ordinary reason for their presence springs to mind. Defendant's brief suggests none.)

> A different image emerges, however, when the trooper's observations and the defendant's answers and comments each are considered in light of the one before and how they lead to the next question and response. That Mr. Sutton said he missed the exit from I–80 to I–25 leading to Denver, for example, is not remarkable, though the exit would be conspicuously indicated on the Interstate highway and something for which, presumably, the defendant would be looking. But, by the time the trooper heard of the missed exit, he had already seen the cooking bags and knew that such bags are commonly used by drug couriers to package high-grade marijuana to suppress the odor and prevent crushing of the product. In very short order he learned that the car driven by Mr. Sutton was a car rented in San Francisco for one day, that Mr. Sutton ha[d] an Illinois driver's license and that the purpose for the rental of the car was for a trip from San Francisco to Denver and back.

> . . . .

> The trooper could reasonably, as he did, infer from the observations and information that Mr. Sutton might be transporting marijuana, [using] the cooking bags to

---

3. Named after the seminal case *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

package it and suppress its odor, pass[ed] the I–25 turnoff because his destination was not Denver, may have used a rental car with a one-day agreement because he did not intend to return it, and had an Illinois driver's license because he lived in Chicago not California, and started in San Francisco because that was the source of the cargo. Given the trooper's training, experience and observations, these were inferences that he could reasonably draw and they amount to reasonable articulable suspicion of criminal activity such that detention beyond the reason for the stop was justified.

[¶ 13] Mr. Sutton claims that the district court's finding that the car was rented for only one day was clearly erroneous. He maintains that the rental agreement provided for a minimum one day rental "but was otherwise an open rental agreement with a daily and weekly rate." The rental agreement actually had two parts. The original agreement was for a white Taurus; however, Mr. Sutton exchanged it for the blue Pontiac. The agreement was apparently a standard form and although it contained hourly, daily and weekly rates, it specifically stated that Mr. Sutton was renting the car for one day. The inclusion of weekly rates on the standard form rental agreement does not support Mr. Sutton's claim that the agreement was open ended.

[¶ 14] Mr. Sutton also claims a notation on the agreement, which indicated that he was allowed to return the car to an alternate location with a rate change, confirmed the rental was open-ended. The notation in the second part of the agreement[4] stated: "REMARKS: RET TO ORD/ADJ RTE IC/B." The trooper testified that he did not know what the notation meant and neither Mr. Sutton nor a representative from the rental agency testified at the suppression hearing to explain the meaning of the notation. Even if we assume, as Mr. Sutton advocates, that the notation allowed him to return the car to another location with a corresponding rate adjustment, that does not change the fact that the agreement specified a one-day rental.

[¶ 15] Mr. Sutton also asserts that he invited the trooper to call the rental company to verify that he had extended the rental agreement and the trooper had an obligation to do so. Initially, we note that it is not entirely clear from the video that Mr. Sutton invited Trooper Mrsny to call the rental company. We have, however, reviewed cases where officers have called rental companies to confirm a traveler's assertions about his travel plans, *see, e.g., Feeney v. State*, 2009 WY 67, ¶ 5, 208 P.3d 50, 52 (2009), but those cases did not state that the trooper was required to undertake such an investigation. Mr. Sutton claims that *Damato*, ¶ 24, 64 P.3d at 709–10, is authority for the proposition that the trooper was required to call the rental company. In *Damato*, we criticized the trooper for failing to ask the defendant about discrepancies between his statements concerning where he had rented the car and where he was to return the car and the information contained in the rental agreement. Here, the trooper did ask Mr. Sutton about the discrepancies. *Damato* does not, therefore, support Mr. Sutton's assertion that the trooper was required to call the rental company before considering the fact that the car should have been returned the day before as a basis for reasonable suspicion to detain him.

[¶ 16] In *Garvin*, the rental agreement stated that the car should have been returned six days before the day of the stop. When the trooper asked her about the past due rental agreement, Ms. Garvin explained that she had left on her trip later than expected and she had contacted the rental agency to extend the return date on the vehicle. *Garvin*, ¶ 5, 172 P.3d at 727. We ruled that, even with Ms. Garvin's explanation, the trooper properly relied on the past due rental agreement as a factor that supported a finding of reasonable suspicion. *Id.*, ¶¶ 15–17, 172 P.3d at 729–30. That decision does not indicate that the trooper was required to further investigate Ms. Garvin's explanation by calling the rental company before he could use the late return as a factor in his analysis.

---

4. A similar handwritten note was included in the first part of the agreement.

[¶ 17] Viewing the evidence in the light most favorable to the district court's determination, we conclude its factual finding that the rental agreement showed a one day rental was not clearly erroneous. Mr. Sutton does not dispute any of the district court's other factual findings but argues that the factors were insufficient, as a matter of law, to establish reasonable suspicion to detain him for a canine drug sniff.

[¶ 18] Turning then to the factors cited by the trooper and district court as establishing reasonable suspicion, we start with the aforementioned rental agreement. We have stated that a rental agreement that contradicts or is somehow inconsistent with the traveler's plans is an appropriate consideration in a reasonable suspicion analysis. *See, e.g., Feeney,* ¶ 21, 208 P.3d at 56–57; *Garvin,* ¶¶ 15–17, 172 P.3d at 729–30. The fact that the rental agreement indicated that Mr. Sutton had only rented the car for one day and it should have been returned the day before the stop was a legitimate factor in the reasonable suspicion analysis.

[¶ 19] We have recognized that "unusual or inconsistent travel plans are a proper consideration in a reasonable suspicion analysis." *Feeney,* ¶ 20, 208 P.3d at 56. *See also, Flood,* ¶¶ 30, 33, 169 P.3d at 547–48. Mr. Sutton told the trooper that he had begun his trip in San Francisco, where he had been staying for approximately one month, and he was traveling to Denver. He had, however, passed the exit to Denver by several miles. Mr. Sutton stated that his girlfriend was living and attending school in Denver and he had made a last minute decision to travel to Denver to attend the birth of his child, although he was already one day past the due date. He also stated that he did not know how long he would stay in Denver. Mr. Sutton's explanation of his trip was, to say the least, strange.

[¶ 20] The trooper attempted to clarify whether Mr. Sutton's Illinois driver's license correctly stated a Chicago address since he had come from California. Mr. Sutton explained that the Illinois address was correct and he had been in California for about a month because he was "taking a break" from Chicago and wanted to see if he would like to live there. Later in the stop, Mr. Sutton stated that he had just started a new job in Illinois before he left to go to California, but he was allowed to take a month off because business was slow.

[¶ 21] All in all, the situation described by Mr. Sutton was certainly odd, if not implausible. He lived and worked in Illinois, yet he had been in California for nearly a month; his pregnant girlfriend lived in Denver, where he was traveling to at the last minute in order to attend the birth of his baby; he did not know how long he would stay in Denver even though he was driving a rental car which would amount to a considerable expense. The trooper was certainly entitled to rely on the unusual nature of this story in making his reasonable suspicion determination.

[¶ 22] The presence of the cooking bags on the front passenger seat was also suspicious. Trooper Mrsny, who was specially trained in drug interdiction, testified that he was aware that such bags are used by drug couriers to package marijuana because they mask the smell and do not crush the controlled substance. As the district court noted, no plausible explanation for the presence of the bags readily comes to mind and Mr. Sutton did not suggest any such explanation to the district court or on appeal. We have stated that the presence of a potential odor masking agent is an appropriate factor for consideration in the reasonable suspicion analysis. *See, Feeney,* ¶ 16, 208 P.3d at 55; *Flood,* ¶ 24, 169 P.3d at 546. While those cases dealt with a masking odor-dryer sheets and cologne, the presence of a product or device used to suppress odor like the cooking bags would also be a proper consideration.

[¶ 23] Although not mentioned by the district court in its ruling denying the motion to suppress, the trooper also testified that he considered Mr. Sutton's unusual level of nervousness as a factor in his reasonable suspicion analysis. Mr. Sutton claims the trooper's statements that he seemed unduly nervous are not borne out by the record. The trooper testified that Mr. Sutton was fidgeting in the patrol car and was sweating even though he complained it was cold outside. He further stated that, when they

shook hands after the trooper gave him the warning, he noticed Mr. Sutton's hand was shaking and very sweaty. The trooper testified that Mr. Sutton seemed even more nervous and broke eye contact when specifically asked whether he was transporting marijuana, as opposed to other illegal drugs.

[¶ 24] Generic nervousness has little weight in establishing reasonable suspicion because a citizen may be expected to be somewhat nervous when stopped by law enforcement for a traffic violation. *Flood,* ¶ 27, 169 P.3d at 546. However, extreme and continued nervousness is entitled to more weight. Id. Moreover, factors such as acting evasive or breaking eye contact when asked certain questions can also form the basis for reasonable suspicion. *See, e.g., Garvin,* ¶ 17, 172 P.3d at 730 (noting that defendant flushed, was evasive and looked away from the officer when answering certain questions but did not exhibit those reactions when answering others). There is nothing in the record to contradict the trooper's testimony that Mr. Sutton was unusually nervous throughout their encounter and reacted suspiciously when asked whether he was transporting marijuana. Consequently, we conclude Mr. Sutton's nervousness is a factor that may be given some weight in the reasonable suspicion analysis.

[¶ 25] These factors, the past due rental agreement, the unusual travel plans, the oven cooking bags and the unusual nervousness, when viewed individually could be seen as innocuous. Nevertheless, when they are all considered together and in relation to one another, they justify the trooper's suspicion that Mr. Sutton was engaging in illegal activities. Mr. Sutton's constitutional rights were not violated when the trooper detained him for the canine drug sniff.

[¶ 26] Affirmed.