2012 WY 131

Carl Anthony DIMINO, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. S–12–0014.

Supreme Court of Wyoming.

Oct. 5, 2012.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina N. Olson, Chief Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Lucas J. Esch, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] After conditionally pleading guilty to possession with intent to deliver marijuana, Carl Anthony Dimino challenges the district court's denial of his motion to suppress evidence discovered during a search of his vehicle. He maintains that he was unconstitutionally detained for a drug dog sniff after a traffic stop and that the subsequent search of his vehicle was illegal. We affirm, con-

cluding the trooper had reasonable suspicion to detain him and the search was legal.

## ISSUES

[¶ 2] Mr. Dimino states a single issue on appeal:

> Did the trial court err in denying appellant's motion to suppress evidence obtained as a result of his illegal detention and the subsequent search of his rental vehicle?

The State articulates two issues, which we rephrase:

1. Did the trooper have a reasonable articulable suspicion of criminal activity to justify detaining Mr. Dimino momentarily so the trooper's drug dog could walk around the rental car for a free air sniff?
2. Did the trooper have probable cause to search Mr. Dimino's rental car, with or without the drug dog alert?

## FACTS

[¶ 3] On February 17, 2011, Wyoming Highway Patrol Trooper Jason Green stopped Mr. Dimino on Interstate 80 in Carbon County, Wyoming for driving 79 to 80 miles per hour in a 75 miles per hour zone. The trooper approached the driver's side window to speak with Mr. Dimino and briefly smelled marijuana. Although he tried, he could not "regain" the scent, smelling only cigarette smoke and pine after that. Mr. Dimino provided the trooper with his driver's license and a rental car agreement. The rental agreement indicated that he had rented the car in San Francisco, California for approximately $1,300.

[¶ 4] The trooper asked Mr. Dimino to accompany him to his patrol car while he wrote out a warning. In response to the trooper's questions about his travel plans, Mr. Dimino stated that he was traveling to the east coast to pick up some items because he had recently relocated to San Francisco after a divorce. He explained that he had flown to San Francisco two weeks earlier and

had been interviewing for a position at Bed, Bath & Beyond.

[¶ 5] Mr. Dimino stated that he had rented the car to drive to the east coast because his own car was "a piece of crap." When asked if it would not have been less expensive to fly back to the east coast rather than rent a car, Mr. Dimino said that renting a car was less expensive because he had waited until the last minute to make his travel plans. Throughout the stop, Mr. Dimino displayed signs of nervousness. Trooper Green observed that he was sweating and his eyes welled up with tears and he was often hesitant to answer the trooper's questions.

[¶ 6] Trooper Green completed the warning, and Mr. Dimino got out of the patrol car. As Mr. Dimino was returning to his car, the trooper asked if he would answer a few more questions but told him that it was not required. Mr. Dimino agreed to answer more questions, and the trooper asked if he was involved in criminal activities like transporting marijuana, which he denied. Mr. Dimino refused the trooper's request to search his vehicle, so the trooper told him that he was going to have his drug dog, Kato, perform an exterior sniff of the vehicle. The dog was very excited when he was released from the patrol car, but shortly calmed down and alerted to the trunk area of Mr. Dimino's car. After retrieving the keys from Mr. Dimino, Trooper Green opened the car and found a duffle bag containing fifteen pounds of marijuana.[1]

[¶ 7] Mr. Dimino was arrested and charged with one count of possession of marijuana in a felony amount and one count of possession with intent to deliver marijuana. He pleaded not guilty to the charges and filed a motion to suppress the evidence obtained during the search of his car. He presented two arguments in furtherance of his motion to suppress—1) the trooper did not have reasonable articulable suspicion to justify detaining him for the dog sniff; and 2) the dog was not sufficiently reliable, so his alert could not establish probable cause for the search of the car. After a hearing, the district court denied Mr. Dimino's motion to suppress. He then entered into a plea

---

1. The duffle bag also contained another drug, THC crystals ("Keefe").

agreement with the State in which he pleaded guilty to the possession with intent to deliver charge and the other charge was dismissed. Mr. Dimino's guilty plea was conditional as he reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced him to serve three to five years' incarceration, and he appealed.

## STANDARD OF REVIEW

[¶ 8] We apply the following standard in reviewing a denial of a motion to suppress evidence:

Factual findings made by a trial court considering a motion to suppress will not be disturbed unless the findings are clearly erroneous. *Meek v. State,* 2002 WY 1, ¶ 8, 37 P.3d 1279, ¶ 8 (Wyo.2002). Because the trial court has the opportunity to hear the evidence, assess witness credibility, and draw the necessary inferences, deductions, and conclusions, we view the evidence in the light most favorable to the trial court's determination. *Id.* Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law and is reviewed *de novo. Vasquez v. State,* 990 P.2d 476, 480 (Wyo.1999).

*O'Boyle v. State,* 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (Wyo.2005). *See also Sutton v. State,* 2009 WY 148, ¶ 9, 220 P.3d 784, 787 (Wyo.2009); *Flood v. State,* 2007 WY 167, ¶ 10, 169 P.3d 538, 542 (Wyo.2007).

## DISCUSSION

### Detention

[¶ 9] Mr. Dimino claims Trooper Green violated his constitutional right to be free from illegal searches and seizures by detaining him for the drug dog sniff. He does not present an independent evaluation of protections offered by the Wyoming Constitution; consequently, we limit our review to federal constitutional standards. *See Flood,* ¶ 12, 169 P.3d at 543. The Fourth Amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-

zures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[¶ 10] There are three tiers of interaction between police and citizens under the Fourth Amendment—consensual encounter, investigatory detention and arrest. *Sutton,* ¶ 10, 220 P.3d at 788. *See also Custer v. State,* 2006 WY 72, ¶ 13, 135 P.3d 620, 624–25 (Wyo. 2006); *Collins v. State,* 854 P.2d 688, 691–92 (Wyo.1993). A traffic stop is analogous to a second tier "investigatory detention" and is sometimes called a *Terry* stop, after *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Barch v. State,* 2004 WY 79, ¶ 7, 92 P.3d 828, 831 (Wyo.2004). "[A]n investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop. . . ." *O'Boyle,* ¶ 47, 117 P.3d at 414. The officer may expand the investigative detention beyond the scope of the initial stop only if the citizen consents to the expanded detention or if "there exists an objectively reasonable suspicion that criminal activity has occurred or is occurring." *Id.,* ¶ 48, 117 P.3d at 414, citing *Damato v. State,* 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo. 2003) and *Brown v. State,* 944 P.2d 1168, 1172 (Wyo.1997). Mr. Dimino refused to consent to a search of his car and indicated that he wanted to leave; consequently, Trooper Green could only extend the investigative detention for the purposes of employing the drug dog if he had reasonable suspicion that Mr. Dimino was involved in criminal activity.

[¶ 11] The district court ruled that the trooper had reasonable suspicion to detain Mr. Dimino:

Once Trooper Green did not let Mr. Dimino leave and conducted the drug dog sniff around the rental vehicle, their police-citizen interaction progressed from a consensual encounter to an investigatory detention. Mr. Dimino was not free to leave at that point and Trooper Green confined him to the borrow pit, away from Mr. Dimino's car. Therefore, in order to detain Mr. Dimino for the drug dog sniff

around the rental vehicle, Trooper Green needed reasonable suspicion to believe that Mr. Dimino was engaged in criminal activity.

At the time that Trooper Green expanded the consensual encounter into an investigatory detention, he knew the following facts:

1. Trooper Green "briefly smelled the odor of Marijuana" emanating from Mr. Dimino's rental vehicle when he approached the driver's side window;

2. Mr. Dimino could not say which Bed, Bath & Beyond store he would be managing even after being asked twice, eventually describing only a general geographic area;

3. The accuracy of Mr. Dimino's claim that it would be less expensive to drive back to New Jersey rather than fly was immediately questionable considering the $1,300.00 cost for the rental vehicle; and

4. Mr. Dimino's nervousness never subsided throughout the traffic stop even after learning he would receive only a warning citation for speeding; he continued to sweat profusely and shake while in the patrol car.

In examining the totality of the circumstances present when Trooper Green deployed Kato for a free air sniff around the rental car, the Court finds that a law enforcement officer would have had an objectively reasonable suspicion to believe that Mr. Dimino was transporting controlled substances in the car. The four facts set out above constitute specific, articulable facts that, taken together with rational inferences, give rise to a reasonable suspicion that Mr. Dimino had committed or was committing a crime. *See Dods v. State,* 2010 WY 133, ¶ 8, 240 P.3d 1208, 1209 (Wyo.2010). Therefore, the Court holds that Trooper Green possessed the reasonable suspicion necessary to detain Mr. Dimino for the drug dog sniff as part of an investigatory detention.

[¶ 12] Mr. Dimino makes a recurring argument throughout his brief, which we address first. He maintains that, because the trooper told him he was free to leave, there had to be additional facts developed during the second encounter to meet the reasonable suspicion requirement. He claims the only additional fact was his refusal to consent to the search, which may not be used to establish reasonable suspicion.

■ [¶ 13] Mr. Dimino is, of course, correct that " '[t]he failure to consent to a search cannot form any part of the basis for reasonable suspicion.' " *Damato,* ¶ 19, 64 P.3d at 708, quoting *United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997). However, he points to no authority for the proposition that the facts gathered by Trooper Green during the initial stop could not be used to provide reasonable suspicion for the later detention to run the drug dog around the car. Mr. Dimino insists Trooper Green did not have reasonable suspicion when he released him the first time or he would not have released him. We disagree with that premise. The trooper may have preferred to approach the situation by releasing Mr. Dimino and seeing if he could obtain Mr. Dimino's consent for more questions and/or a search.

[¶ 14] Mr. Dimino does not direct us to any cases where we have called into question an officer's decision to release a citizen even though he already has reasonable suspicion of criminal activity and then pursue further questioning. To the contrary, *Sutton* is an example of a case where we relied on facts developed before the officer told the citizen he was free to leave to find reasonable suspicion to support a later detention. The trooper stopped Mr. Sutton for speeding, issued him a warning, and told him he was free to leave. As in this case, the trooper then inquired as to whether he could ask Mr. Sutton a few more questions, to which Mr. Sutton acquiesced. After questioning him about the presence of drugs in the car and receiving negative responses, the trooper asked for permission to search the car, which Mr. Sutton refused. Nevertheless, the trooper detained him for a drug dog sniff and, after the dog alerted, the car was searched and marijuana was found. *Id.,* ¶¶ 5–6, 220 P.3d at 786.

■ [¶ 15] Mr. Sutton appealed, claiming the trooper lacked reasonable suspicion

to detain him for the drug dog sniff. In reviewing his claim, we considered facts discovered or observed by the trooper before he told Mr. Sutton he was free to leave. *Id.,* ¶¶ 18–26, 220 P.3d at 790–91. *See also Feeney v. State,* 2009 WY 67, 208 P.3d 50 (Wyo. 2009). Considering this precedent, we conclude it was proper for the district court to consider the facts developed during the initial stop to determine whether the officer had reasonable articulable suspicion to further detain Mr. Dimino for a drug dog sniff.

■■ [¶ 16] This ruling is consistent with other principles we employ in determining whether an officer had reasonable suspicion under the Fourth Amendment. We routinely state that we must look to the totality of the circumstances and how those circumstances developed during the officer's encounter with the occupant of the vehicle. *See Custer,* ¶ 20, 135 P.3d at 626. In considering the totality of the circumstances, " '[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions.' " *Damato,* ¶ 16, 64 P.3d at 707, quoting *Wood,* 106 F.3d at 946.

[¶ 17] In analyzing the specific facts of this case, we start with the odor of marijuana. Trooper Green testified that he had advanced training in controlled substance interdiction and that he was familiar with the very unique smell of marijuana. Although the trooper testified he smelled the odor only briefly when he first approached Mr. Dimino's window, he stated that he recognized the odor as marijuana. On appeal, Mr. Dimino argues the trooper's testimony was equivocal because he testified that he only "thought" he smelled the odor of marijuana and he could not regain the odor, later smelling only cigarettes and pine like from a menthol cigarette. While in his initial testimony the trooper stated he "thought" he smelled marijuana, he later confirmed that, although he also smelled tobacco and pine, he had smelled marijuana first. The district court obviously found the trooper's testimony to be credible and there is nothing to refute it.

■■ [¶ 18] The distinctive odor of marijuana establishes reasonable, articulable suspicion that an individual may be engaged in violation of narcotics laws. *See, e.g., United States v. Ozbirn,* 189 F.3d 1194, 1200 (10th Cir.1999); *United States v. Corral,* 823 F.2d 1389, 1393 (10th Cir.1987). In fact, as will be discussed in more detail later, the odor of marijuana has been found to satisfy the more stringent "probable cause" test. *See, e.g., McKenney v. State,* 2007 WY 129, ¶¶ 9–10, 165 P.3d 96, 98 (Wyo.2007); *Rideout v. State,* 2005 WY 141, ¶ 17, 122 P.3d 201, 205–06 (Wyo.2005).

■■■ [¶ 19] Although the odor of marijuana alone was sufficient to justify detaining Mr. Dimino, the trooper and the district court also found other circumstances which raised reasonable suspicion about criminal activity. One such factor was Mr. Dimino's travel plans. "[U]nusual or inconsistent travel plans are a proper consideration in a reasonable suspicion analysis." *Feeney,* ¶ 20, 208 P.3d at 56. *See also Flood,* ¶¶ 30, 33, 169 P.3d at 547–48. Although Mr. Dimino stated that he had flown to California and he had a car on the east coast, he rented a car to drive all the way across the country. He said he did so because his car was a "piece of crap" and it was less expensive to rent the car than to fly back to the east coast. The trooper found this explanation suspicious because Mr. Dimino paid approximately $1,300 to rent the car. *See also Feeney,* ¶¶ 5, 21, 208 P.3d at 52, 56–57; *Garvin v. State,* 2007 WY 190, ¶¶ 15–16, 172 P.3d 725, 729 (Wyo.2007) (stating a rental agreement that contradicts or is somehow inconsistent with the traveler's plans is an appropriate consideration in a reasonable suspicion analysis). These circumstances were suspicious and provided grounds for finding reasonable articulable suspicion of criminal activity.

[¶ 20] The district court also relied on Mr. Dimino's nervousness as one of the factors establishing reasonable suspicion. The trooper testified that Mr. Dimino was sweating and asked to roll down the window in the patrol car even though it was only 25 degrees outside and the interior temperature of the car was 65 degrees. When the trooper asked Mr. Dimino questions, he would hesitate and

stall before he answered. The trooper testified that Mr. Dimino "touched his face quite a bit, which is usually a sign of deceit, and the carotid artery on his neck was throbbing the entire time." The trooper also noticed the bottom lid of Mr. Dimino's eyes welled up with tears, which is usually a sign of an "adrenaline dump." He considered all of these signs as indicative of "nervousness that continued throughout the stop."

[¶ 21] As we have recognized in other cases, a citizen may be expected to be somewhat nervous when stopped by law enforcement for a traffic violation; therefore, generic nervousness has little weight in establishing reasonable suspicion. *Flood*, ¶ 27, 169 P.3d at 546. However, unusual and continued nervousness is entitled to more weight. *Id.* Considering the many signs of anxiety in this case, we conclude Mr. Dimino's nervousness is a factor that may be given some weight in the reasonable suspicion analysis.

[¶ 22] All of these factors together justified the trooper's suspicion that Mr. Dimino was engaged in illegal activities. The district court properly held that Mr. Dimino's constitutional rights were not violated when the trooper detained him for the drug dog sniff.

### Search

[¶ 23] Mr. Dimino also challenges the search of his vehicle without a warrant. Under the Fourth Amendment's protection against illegal searches and seizures, warrantless searches are generally per se illegal. One exception to the warrant requirement is the search of a vehicle if law enforcement has probable cause to believe it contains contraband. *Tucker v. State*, 2009 WY 107, ¶ 22, 214 P.3d 236, 243 (Wyo.2009); *Callaway v. State*, 954 P.2d 1365, 1370 (Wyo. 1998). "Probable cause justifying a stop and search of a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence of a crime." *Tucker*, ¶ 22, 214 P.3d at 243.

[¶ 24] In this case, Trooper Green searched Mr. Dimino's car after the drug dog alerted to the presence of illegal drugs. "An alert by a properly trained and reliable drug dog provides probable cause to search a vehicle." *Phelps v. State*, 2012 WY 87, ¶ 36, 278 P.3d 1148, 1158 (Wyo.2012), citing *Dickey v. State*, 2011 WY 136, ¶ 14, 261 P.3d 739, 743 (Wyo.2011). Mr. Dimino challenged the drug dog alert claiming the trooper's and dog's training was not sufficient and the dog was not reliable. The district court did not make a determination on the validity of the drug dog alert but ruled, instead, that the odor of marijuana was sufficient to establish probable cause for the search.

[¶ 25] In *McKenney*, ¶¶ 9–10, 165 P.3d at 98 (Wyo.2007), citing 2 Wayne R. LaFave, *Search & Seizure* § 3.6(b), at 310–11 (4th ed.2004), we ruled that the distinctive odor of marijuana emanating from a particular place can establish probable cause to search. In this case, the detection of the odor of marijuana by an officer specially trained in drug interdiction was sufficient to create a fair probability that Mr. Dimino's vehicle contained contraband. *Tucker*, ¶ 22, 214 P.3d at 243. The district court obviously found the trooper's testimony to be credible and, as we stated earlier, there is nothing to undermine that finding.

[¶ 26] Mr. Dimino dovetails his challenge to the search with his objection to the detention, arguing the illegal detention tainted any subsequent finding of probable cause to search. He claims the discovered marijuana was fruit of the poisonous tree and, therefore, should have been suppressed as evidence by the district court. Given we have concluded the detention was supported by reasonable articulable suspicion and was not illegal, this argument must also fail. The district court correctly ruled that the trooper had probable cause to search Mr. Dimino's vehicle and his constitutional rights were not violated.

[¶ 27] Affirmed.