2004 WY 79

**Alex Douglas BARCH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 03–185.**

Supreme Court of Wyoming.

June 30, 2004.

---

Representing Appellant: John P. LaBuda and Stephen K. Palmer of Palmer & LaBuda, P.C., Rock Springs, Wyoming. Argument by Mr. Palmer.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General. Argument by Ms. Tibbetts.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   The sole issue presented by this appeal is whether reasonable suspicion existed to permit the continued detention of Appellant Alex Douglas Barch for a dog sniff of the exterior of his vehicle after state troopers had concluded a routine traffic stop. After issuing Barch a warning ticket for a missing front license plate and telling him that he was free to leave, state troopers conducted a dog sniff of the exterior of Barch's vehicle and discovered one and a half pounds of marijuana and one pound of psilocybin mush-

rooms. After his motion to suppress was denied, Barch entered a conditional guilty plea to one count of possession with intent to deliver a controlled substance.

[¶ 2]   We hold that the state troopers' continued detention of Barch was not based upon reasonable suspicion as required by the Fourth Amendment to the United States Constitution. The order denying the suppression motion is reversed, and this case is remanded to the district court, where Barch shall be allowed to withdraw his plea of guilty.

## ISSUES

[¶ 3]   Barch presents this statement of the issue presented for review:

The continued detention of Appellant was not justified by reasonable and articulable suspicion of illegal activity and therefore violative of the Fourth Amendment of the Wyoming and United States Constitutions.

The State rephrases the issue as:

Did the District Court err in denying Appellant's motion to suppress?

## FACTS

[¶ 4]   On December 7, 2002, Trooper Matthew Brackin executed a traffic stop of Barch's vehicle on I–80 for failure to display a front license plate. Upon approaching the vehicle, Trooper Brackin asked Barch for his driver's license, registration, and proof of insurance. While Barch was getting the requested information, Trooper Brackin asked Barch about his travel plans. Barch responded that he was on his way from Portland to Denver to visit some friends. Trooper Brackin asked Barch if his friends lived in Denver or a suburb and Barch replied that he was not sure and specified south Denver. The trooper also noticed that Barch appeared hurried. Barch retrieved the front plate from his trunk, and Trooper Brackin noticed several Rubbermaid containers in the trunk, some of which contained dried foods. Trooper Brackin returned to his patrol car to run a driver's license check and to prepare a warning ticket and noticed Trooper Tippy driving by and radioed him to come to the scene. Trooper Brackin returned Barch's

driver's license, registration, and insurance card, issued the warning ticket, and told Barch that he was free to leave. Trooper Tippy arrived and parked behind Brackin's patrol car. As Barch approached his driver's door to leave, Trooper Brackin asked if he could ask a few more questions, and Barch consented. Trooper Brackin asked Barch additional questions regarding his trip, employment in Portland, the amount of cash he had and whether drugs were inside the vehicle. Trooper Brackin asked Barch for permission to search his vehicle, and Barch refused. Brackin then told Barch that he was going to have Trooper Tippy walk his drug dog around Barch's car and if the dog did not alert to anything in the car, they would let him go. At the suppression hearing, Trooper Brackin agreed that Barch had not consented to the search.

[¶ 5] The drug dog alerted to the rear wheel area at first and, after being taken around again, alerted on the front license plate and the left side of the trunk area. Inside the Rubbermaid containers in the trunk, Trooper Brackin discovered about one and a half pounds of marijuana and a pound of psilocybin mushrooms. Barch was arrested and filed a motion to suppress. Following a hearing, his motion to suppress was denied, Barch entered a conditional guilty plea, and this appeal followed.

## DISCUSSION

### Standard of Review

[¶ 6] On appeal, findings on factual issues made by the district court considering a motion to suppress are not disturbed unless they are clearly erroneous. In conducting the hearing on the motion to suppress, the district court has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions; we will, therefore, view the evidence in the light most favorable to the district court's determination. Whether an unreasonable search or seizure has occurred in violation of constitutional rights presents a question of law which we review de novo. *Damato v. State,* 2003 WY 13, ¶ 7, 64 P.3d 700, ¶ 7 (Wyo.2003). Barch limits his analysis to the Fourth

Amendment of the Federal Constitution. Without a state constitutional analysis, we decide a search and seizure issue solely under the Federal Constitution. *Id.* (citing *Vasquez v. State,* 990 P.2d 476, 485 (Wyo. 1999)). The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.

### Reasonable Suspicion Analysis

[¶ 7] The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *Damato,* ¶ 8 (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (per curiam) (quotation marks and citations omitted)); *see also, Illinois v. McArthur,* 531 U.S. 326, 331–32, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Damato,* ¶ 9; *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). However, a routine traffic stop is more analogous to an investigative detention than a custodial arrest and such stops are analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Damato,* ¶ 9.

> The investigatory stop represents a seizure which invokes Fourth Amendment safeguards, but, by its less intrusive character, requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime.

*Id; Wilson,* 874 P.2d 215, 220 (Wyo.1994) (citing *Lopez v. State,* 643 P.2d 682, 683 (Wyo.1982)); *see also Putnam v. State,* 995

P.2d 632, 637 (Wyo.2000); and *McChesney v. State,* 988 P.2d 1071, 1074 (Wyo.1999).

[¶ 8] We have a dual inquiry for evaluating the reasonableness of an investigatory stop: (1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first instance. *Damato,* ¶ 9; *Wilson,* 874 P.2d at 223 (quoting *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879); *see also United States v. Hensley,* 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). The conduct of an officer is judged by an objective standard which takes into account the totality of the circumstances. *Damato,* ¶ 9; *Putnam,* 995 P.2d at 637; *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Lang,* 81 F.3d 955, 965 (10th Cir.1996); *Martindale v. State,* 2001 WY 52, ¶ 11, 24 P.3d 1138, ¶ 11 (Wyo.2001). In applying this test, the Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Damato,* ¶ 9; *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). "The government has the burden of demonstrating that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Damato,* ¶ 9 (quoting *United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir.1993)).

[¶ 9] Here, Barch does not dispute that the initial stop was valid, and the State concedes that Barch's detention after the completion of the traffic stop was not consensual and required reasonable suspicion of criminal activity. We, therefore, must examine the second prong of *Terry,* "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. at 1879. "In the course of making a routine traffic stop, a law enforcement officer may: request a driver's license and vehicle registration; run a computer check; and issue a citation." *Damato,* ¶ 13; *Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998) (citing *United States v. Elliott,* 107 F.3d 810, 813 (10th Cir.1997)); *see also, Wilson,* 874 P.2d

at 224. Generally, the driver must be allowed to proceed without further delay once the officer determines that the driver has a valid license and is entitled to operate the vehicle. *Damato,* ¶ 13; *Burgos–Seberos,* 969 P.2d at 1133. "In the absence of the particular individual's valid consent, an officer may expand an investigative detention only if there exists an 'objectively reasonable and articulable suspicion' that criminal activity has occurred or is occurring." *Damato,* ¶ 13; *United States v. Williams,* 271 F.3d 1262, 1267 (10th Cir.2001), *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002) (citing *United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir.1998)). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Damato,* ¶ 13 (citing *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). *Damato* determined that this Court will determine if the totality of the circumstances demonstrates the existence of objectively reasonable suspicion of illegal activity. *Damato,* ¶ 16.

[¶ 10] The State contends that, under the totality of the circumstances, the detention was justified by a reasonable suspicion of criminal activity and points to the following factors:

1. Barch was unable to identify specifically his destination in the Denver area;

2. Barch was carrying a larger quantity of food than was necessary for his travel plans;

3. Barch was nervous and hurried;

4. Barch had been unemployed for two months making it unlikely he could afford a vacation;

5. Barch was from Portland, a known drug source area.

The State concedes that some of these factors are innocuous when considered in isolation, but contends that viewed in totality through the eyes of a reasonable law enforcement officer, they were sufficient to give rise to the necessary reasonable suspicion to justify a brief detention since the dog was pres-

ent at the scene and the sniff took only a minute or two.

[¶ 11] In *Damato*, we determined that factors three and five are of little significance in raising reasonable suspicion because the average citizen is usually nervous when stopped by law enforcement for a routine traffic violation and because nearly all large areas can be called known drug hubs. *Damato*, ¶¶ 23, 24. Without further facts to distinguish these factors in this situation, these factors must be deemed consistent with innocent conduct. Trooper Brackin testified that his suspicions were aroused because Barch could not specify the precise Denver suburb where his friends lived; however, cross-examination revealed that Trooper Brackin had once flown into Denver's airport known as Stapleton and thought it was in south Denver without realizing that the airport was actually in Commerce City, Colorado. From this, Barch contends that it is not unusual to specify south Denver instead of the specific suburb and, without evidence of lying, misrepresentation or discrepancies, this lack of knowledge is consistent with innocent conduct and insufficiently suspicious. The State contends generally that contradictory, implausible or vague travel plans can give rise to a reasonable suspicion of criminal activity but makes no argument that this specific statement is any or all of those factors. We agree that Barch established that specifying south Denver rather than a particular suburb is common to many travelers and not evidence of contradictory, implausible or vague travel plans that should give rise to a reasonable suspicion of criminal activity. In *Damato*, we considered the presence of food and said that factor described "a very large category of presumably innocent travelers and any suspicion associated with these items is virtually nonexistent." *Damato*, ¶ 25 (quoting *United States v. Wood*, 106 F.3d 942, 947 (10th Cir.1997)). Finally, Trooper Brackin found it suspicious that Barch could travel based on the trooper's belief that an unemployed person would not be able to afford to travel while unemployed. However, Trooper Brackin's belief is an unjustified assumption on his part and traveling while unemployed is innocent conduct that generally should not arouse suspicion. *United States v. Guzman*, 864 F.2d 1512, 1520 (1988), *overruled on other grounds*, 71 F.3d 783 (10th Cir.1995). Under our totality of the circumstances test, however, individually innocent factors can, in combination, rise to create reasonable suspicion. *Damato*, ¶ 26. Here, Trooper Brackin stopped a young male traveling alone from a drug hub, Portland, to an unknown suburb in south Denver for the claimed purpose of seeing friends although he had been unemployed for two months and possessed dried food in containers. When considered together, these factors do not provide reasonable suspicion for illegal conduct.

[¶ 12] We make this determination after a comparison with our decision in *Meadows v. State*, 2003 WY 37, 65 P.3d 33 (Wyo.2003). There, we held that the trooper had reasonable suspicion of criminal activity justifying continued detention of defendants after traffic citations were issued because there was a lack of identification of the vehicle and defendant who was driver of the car, there was no proof of insurance or registration on the car, defendant who was a passenger of the car supplied officers with false identification, defendants' actions were not consistent with their claims of traveling to Ohio for a funeral when their itineraries disagreed and were traveling without cash or an ATM card, and these facts combined with weighted trunk and defendant's abnormal nervousness gave rise to reasonable suspicion that they had committed or were committing a crime. *Meadows*, ¶¶ 20, 21. The degree of suspicion aroused by defendant's conduct in *Meadows* sufficient to permit a detention is lacking in this case and cannot justify Barch's continued detention once the traffic stop was concluded and Barch was free to leave the scene. The order denying the motion to suppress is reversed. The matter is remanded to district court for withdrawal of Barch's guilty plea.