DAVIS, Chief Justice.
*729 [¶1] Devon Matthew Brown entered a conditional guilty plea to felony possession of a controlled substance (marijuana) with intent to deliver, reserving his right to appeal the district court's denial of his motion to suppress evidence. On appeal, Mr. Brown contends that law enforcement unlawfully detained him to conduct a canine sniff after completing a traffic stop. We reverse.
ISSUES
[¶2] Mr. Brown presents two issues for review:
I. Whether the district court's finding that Mr. Brown's demeanor changed when he revoked consent was clearly erroneous?
II. Whether Mr. Brown was subjected to an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution?
The State raises a third issue: Whether Mr. Brown waived his right to assert that the traffic stop concluded earlier than Mr. Brown argued during the suppression hearing?
FACTS
[¶3] On August 31, 2016, Corporal Gary Spears of the Campbell County Sheriff's Department observed Mr. Brown's red utility vehicle traveling at a high rate of speed in Gillette, Wyoming. Corporal Spears turned around to catch up to the vehicle and observed Mr. Brown swerving within his lane of travel, crossing the center line, and clocked him going 53 miles per hour in a 45 mile per hour zone. As Corporal Spears neared Mr. Brown's vehicle, Mr. Brown quickly entered a turn lane, hit his brakes, and entered a dead-end street.
[¶4] Corporal Spears initiated a traffic stop and approached Mr. Brown. When asked about his travel plans, he stated he was headed to his home, which was not located on the dead-end street, after traveling to Gillette from Torrington. He informed Corporal Spears that he had received a speeding ticket earlier that day on the interstate near Wheatland and that he was tired from his long drive.
[¶5] Corporal Spears initially suspected that Mr. Brown might be intoxicated because of his driving and bloodshot eyes. However, he did not appear to be intoxicated during questioning, which led Corporal Spears to believe his driving, including his abrupt turn, "could be from trying to conceal something." Corporal Spears obtained Mr. Brown's identification and returned to his patrol vehicle where he learned from his dispatcher that Mr. Brown was on unsupervised probation for possession of marijuana.
[¶6] Corporal Spears decided not to issue a traffic citation. He went back to Mr. Brown's vehicle and returned his identification. When asked, Mr. Brown confirmed he was on probation and volunteered, "You may sobriety test me, you may look, do whatever you like, the other cop did as well." During this conversation, Corporal Spears thought he smelled a faint odor of marijuana, but due to the wind, it was difficult to be sure. He decided to accept Mr. Brown's unsolicited offer to search and requested Mr. Brown exit the vehicle so he could run his drug dog through it.
[¶7] Mr. Brown hesitated at that point, and he told Corporal Spears that he wanted to make a call to his friend or his mother because it wasn't his vehicle. Corporal Spears explained that he could consent even if he did not own the car, but Mr. Brown remained hesitant. He asked if he could go, but Corporal *730 Spears insisted that he exit the vehicle and stated, "First of all, [you're] totally cooperative, I said ok, you're balking now, so minimum intrusion, I'm gonna run the dog around your car." Mr. Brown complied, and Corporal Spears retrieved his drug dog, who alerted to the exterior of the vehicle in less than a minute.
[¶8] Corporal Spears searched the interior of the vehicle and found a jar containing marijuana and another package with three sealed baggies of marijuana. The State charged Mr. Brown with felony possession of a controlled substance with intent to deliver.
[¶9] Mr. Brown filed a motion to suppress, arguing that Corporal Spears lacked reasonable articulable suspicion to expand the scope of the stop and to conduct a canine sniff. The district court denied Mr. Brown's motion after an evidentiary hearing. It found that several factors supported a finding of reasonable suspicion to extend the stop, and that the length of the detention, ten minutes and thirty-seven seconds, was not unreasonable. After the district court denied his motion, Mr. Brown entered a conditional plea of guilty, preserving his right to appeal the adverse decision on his suppression motion. The district court sentenced Mr. Brown to three to five years of imprisonment, with credit for 54 days served, and suspended the sentence subject to four years of supervised probation. Mr. Brown timely appealed after entry of the Sentence and Probation Order.
STANDARD OF REVIEW
[¶10] In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. Rodriguez v. State , 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citing Jennings v. State , 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016) ). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." Kunselman v. State , 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (quoting Hembree v. State , 2006 WY 127 ¶ 7, 143 P.3d 905, 907 (Wyo. 2006) ). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." Feeney v. State , 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citing Neilson v. State , 599 P.2d 1326, 1330 (Wyo. 1979) ). "The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo." Rodriguez , ¶ 15, 430 P.3d at 770.
DISCUSSION
[¶11] Mr. Brown challenges the denial of his motion to suppress, claiming that Corporal Spears unlawfully detained him after returning his identification approximately seven minutes and forty seconds into the stop, or alternatively, approximately nine minutes and fourteen seconds into the stop when Mr. Brown revoked his consent to search and asked if he could leave. In response, the State contends that Mr. Brown waived any claim that he was unlawfully detained on return of his identification, but regardless, that Corporal Spears had reasonable, articulable suspicion to detain him to conduct a canine sniff after completing the traffic stop. We first address the State's contention that Mr. Brown failed to preserve any claim that he was unlawfully detained on return of his identification.
I. Waiver
[¶12] The State correctly notes that a guilty plea waives appellate review of all non-jurisdictional claims, including claims of unlawfully obtained evidence. See , e.g., Kunselman , ¶ 11, 188 P.3d at 569. W.R.Cr.P. 11(a)(2) provides the sole exception to the waiver rule and "allows a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion." Kunselman, ¶ 11, 188 P.3d at 569. We have cautioned that although a conditional guilty plea provides a mechanism for appellate review, it does not provide carte blanche permission to present any and all arguments on appeal. Id. ¶ 11, 188 P.3d at 570. Rather, an appellant's argument is limited to those *731 issues clearly brought to the district court's attention. Id.
[¶13] In determining the scope of an issue brought to the district court's attention, we will read any ambiguity in the conditional plea agreement "against the Government and in favor of a defendant's appellate rights." United States v. Anderson , 374 F.3d 955, 957 (10th Cir. 2004) (citation omitted); see also Lovato v. State , 901 P.2d 408, 411 (Wyo. 1995) (explaining that " W.R.Cr.P. 11(a)(2) is identical, in all material aspects, to the corresponding federal rule" and consideration of relevant federal precedent is therefore proper). "[T]he text of the plea agreement is our guide." Anderson , 374 F.3d at 957. Applying these standards, we are not persuaded that Mr. Brown waived his right to argue that he was unlawfully detained after Corporal Spears returned his identification.
[¶14] In his plea agreement, Mr. Brown reserved the right to "seek review of the adverse determination of his Motion to Suppress Evidence ." His suppression motion broadly challenged the scope of the stop, contending that Corporal Spears lacked reasonable suspicion:
6. The deputy improperly expanded the scope of the stop without reasonable articulable suspicion of further illegal activity.
7. All evidence obtained in violation of the defendant's Fourth Amendment right against illegal searches and seizures should therefore be suppressed pursuant to both the United States and Wyoming Constitutions.
(Emphasis added.) After the suppression hearing concluded, the district court determined that "there was reasonable cause to detain the young man so as to permit the dog to do a free air sniff, not in the vehicle, but around the vehicle." Nothing in the plea agreement, the suppression motion, or the district court's denial of the suppression motion limited Mr. Brown's Fourth Amendment challenge to precisely nine minutes and fourteen seconds into the stop.
[¶15] We acknowledge that Mr. Brown's argument became more focused at the suppression hearing when his counsel argued during closing remarks that Corporal Spears lacked reasonable suspicion to further detain him after he revoked his consent and asked to leave nine minutes and fourteen seconds into the stop, whereas Mr. Brown now contends that the traffic stop concluded two minutes earlier. However, the district court did not specifically determine when Corporal Spears completed the traffic stop, and Mr. Brown's general allegation that Corporal Spears unlawfully expanded the scope of the stop without reasonable articulable suspicion has not changed.
[¶16] These circumstances are different from those in cases where we determined waiver applied. See, e.g. , Morgan v. State , 2004 WY 95, ¶¶ 22-25, 95 P.3d 802, 808-09 (Wyo. 2004) (appellant waived right to argue a lack of probable cause and failure to establish foundation for reliability of the drug dog where appellant limited the suppression motion to whether an exterior dog sniff constituted a search); Lindsay v. State , 2005 WY 34, ¶¶ 19 n.7, 108 P.3d 852, 857 n.7 (Wyo. 2005) (declining to consider appellant's challenge to the reasonableness of the initial stop where appellant only challenged the reasonableness of the further detention before the district court); Kunselman , ¶¶ 10-12, 188 P.3d at 569-70 (appellant waived right to challenge the legality of the initial stop because her motion to suppress and argument at the suppression hearing focused on the scope and duration of the stop and the subsequent search of her purse); see also Anderson , 374 F.3d at 958 (new theory advanced on appeal fell outside the scope of appellant's reserved appellate rights where the plea agreement preserved only the right to appeal the order denying defendant's motion to suppress and neither the order nor the motion raised the new "improper-patdown argument").
[¶17] Furthermore, this is not a case in which the record is undeveloped, thus precluding our review. See, e.g. , Snell v. State , 2014 WY 46, ¶ 24, 322 P.3d 38, 47 (Wyo. 2014) (declining to review an issue because the facts relevant to a determination were not developed before the district court); cf. Campbell v. State , 2004 WY 106, ¶ 14, 97 P.3d 781, 785 (Wyo. 2004) (finding sufficient *732 evidence to review an issue the district court did not analyze). The evidence at the suppression hearing encompassed the entire stop, and it included Corporal Spears' body camera video.
[¶18] The district court's decision rests largely on its finding that Corporal Spears had reasonable, articulable suspicion prior to Corporal Spears returning Mr. Brown's identification. The district court specifically noted that although Corporal Spears did not issue a citation, "[t]hat doesn't mean he can't take into account [the] myriad of factors" leading up to the return of Mr. Brown's identification, including Mr. Brown's probation status, and the district court analyzed all of those factors to support its reasonable suspicion determination. Consequently, the record makes available those facts relevant to our review of the district court's determination. For these reasons, we consider the full scope of his Fourth Amendment challenge.
II. Scope of the Stop
[¶19] Mr. Brown concedes that the initial traffic stop was justified, but he contends that his continued detention for a canine sniff of his vehicle after Corporal Spears completed the traffic stop violated the Fourth Amendment of the federal constitution.[1] U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...."). We evaluate the reasonableness of an investigatory stop under the Fourth Amendment by using the two-part inquiry from Terry v. Ohio , 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) : "(1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance." Kennison , ¶ 13, 417 P.3d at 150. "An officer's conduct is judged by an objective standard taking into account the totality of the circumstances." Sweets v. State , 2017 WY 22, ¶ 9, 389 P.3d 1214, 1216 (Wyo. 2017) (quoting LaPlant v. State, 2006 WY 154, ¶ 14, 148 P.3d 4, 7 (Wyo. 2006) ). "[W]hile the test is objective, the officer's training, experience, and expertise are to be considered as part of the 'totality of the circumstances.' " Speten v. State , 2008 WY 63, ¶ 4, 185 P.3d 25, 28 (Wyo. 2008) (citing McKenney v. State , 2007 WY 129, ¶ 11, 165 P.3d 96, 98-99 (Wyo. 2007) ).
[¶20] As to the second prong of the Terry test, we note that "[a]n investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Campbell , ¶ 12, 97 P.3d at 784. During a routine traffic stop, an officer may request a driver's license, proof of insurance, and vehicle registration, run a computer check, and issue a citation or warning. Id. ¶ 12, 97 P.3d at 785. The driver and his vehicle may only be detained for the period of time reasonably necessary to complete these routine matters. Id. ; see also Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). "Once the initial reason for a stop has been resolved, an officer must have specific, articulable facts and rational inferences giving rise to reasonable suspicion that another crime has been or is being committed to justify a continued detention." Meadows v. State , 2003 WY 37, ¶ 18, 65 P.3d 33, 38 (Wyo. 2003) (citing United States v. McRae, 81 F.3d 1528, 1534 (10th Cir. 1996) ); see also O'Boyle v. State , 2005 WY 83, ¶ 49, 117 P.3d 401, 415 (Wyo. 2005).
A. New Facts Are Not Required to Extend the Initial Stop
[¶21] Mr. Brown contends Corporal Spears completed the initial traffic stop when he returned Mr. Brown's identification without issuing a citation, and he lacked reasonable suspicion of other unlawful activity to further detain Mr. Brown. Mr. Brown argues that the facts developed before Corporal Spears returned his identification (e.g ., his driving, *733 bloodshot eyes, and unusual route home) cannot support reasonable suspicion for further detention and, instead, new facts were required to expand the scope of the stop. Our precedent defeats Mr. Brown's argument.
[¶22] In Dimino v. State , 2012 WY 131, 286 P.3d 739 (Wyo. 2012), we rejected Mr. Dimino's claim that additional facts were necessary to establish reasonable suspicion to conduct a canine sniff after the trooper completed the initial traffic stop and asked Mr. Dimino to voluntarily answer further questions. Id. ¶¶ 12-13, 286 P.3d at 743. Applying Sutton v. State , 2009 WY 148, ¶¶ 18-26, 220 P.3d 784, 790-91 (Wyo. 2009), we held that the district court could properly consider facts developed during the initial stop to determine whether the officer had reasonable articulable suspicion to further detain Mr. Dimino to conduct a drug dog sniff. Dimino , ¶ 15, 286 P.3d at 744. Mr. Brown did not cite Dimino or Sutton , and we find nothing in his argument to distinguish or cause us to question our holdings in either case. Consequently, the district court could properly consider facts obtained during the initial traffic stop to determine whether Corporal Spears had reasonable suspicion of other unlawful activity sufficient to conduct an exterior canine sniff after returning Mr. Brown's identification.
B. Circumstances Establishing Reasonable Suspicion
[¶23] In determining whether Corporal Spears had a reasonable suspicion to further detain Mr. Brown under the Fourth Amendment, we look to the totality of the circumstances and how those circumstances developed during Corporal Spears' encounter with him. Sutton , ¶ 11, 220 P.3d at 788. We do not examine each circumstance individually, but instead "we evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct." Id. (quoting Garvin v. State , 2007 WY 190, ¶ 16, 172 P.3d 725, 729 (Wyo. 2007) ). Reasonable suspicion may exist even if "each observation" is "susceptible to an innocent explanation." Id. "In considering the totality of the circumstances, '[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions.' " Sutton , ¶ 11, 220 P.3d at 788 (quoting Damato v. State , 2003 WY 13, ¶ 16, 64 P.3d 700, 707 (Wyo. 2003) ).
[¶24] At the suppression hearing, Corporal Spears testified that he has been employed by the Campbell County Sheriff's office since 1993, and that he received drug interdiction training and experience throughout his employment. He testified that he became a K-9 handler in 1998, and that he and his K-9 Rocky are currently a certified drug detection team.
[¶25] Corporal Spears also testified about the specific facts of the traffic stop. He explained that he initially thought Mr. Brown might be intoxicated, but other than his bloodshot eyes, Mr. Brown did not appear to be under the influence of alcohol or marijuana. This led Corporal Spears to believe that his driving, including an abrupt turn on a dead-end street after Corporal Spears caught up with him, "could be from trying to conceal something at that time."
[¶26] Corporal Spears testified that he thought Mr. Brown's travel route from Torrington to Gillette and receipt of a ticket on the interstate by Wheatland was "a little odd" because "there's an exit to and from Torrington that's north of Wheatland." Corporal Spears learned from dispatch that Mr. Brown was on unsupervised probation for possession of marijuana, and he testified that when questioning Mr. Brown about his probation status, he thought he smelled marijuana:
A. While I was talking to him, after I went back up and talked to him and asked him about the probation, I thought I could smell a little bit of weed at one time, but the wind was blowing so hard, I kept trying to smell again and again, and I could never smell it a second time, so I didn't smell it again.
Q. But you did smell it one time?
A. Yeah, I believed it was, yes, a faint odor of marijuana, but because of the wind *734 it was really difficult to distinguish.[2 ]
[¶27] Even though he thought he smelled marijuana and could conduct a canine free-air sniff on that basis, Corporal Spears testified that Mr. Brown "openly volunteered to give me total consent to search the car without me asking." However, when Corporal Spears asked Mr. Brown to step out of the car so he could run the dog through it, Mr. Brown "balked," stating that he wanted to first call his friend and then his mom because it was not his car. Mr. Brown remained hesitant after Corporal Spears explained he could consent to a search even if he did not own the vehicle.
[¶28] Corporal Spears described this conduct as a "demeanor change." He testified that after Mr. Brown revoked his consent, he could not search the inside of the vehicle, but still believed he could run his K-9 around the outside of it. The district court also received Corporal Spears' body cam video into evidence. The parties presented no other witnesses or evidence.
[¶29] The district court found Corporal Spears' testimony credible, stating that he was very honest, "even-handed," and had many years of experience in his line of work. Relying on Corporal Spears' testimony and the body cam video, the district court concluded that the totality of the circumstances created a reasonable suspicion of criminal behavior sufficient to expand the scope of the stop to conduct a drug dog sniff. In reaching its conclusion, the district court found several circumstances established reasonable suspicion, which we summarize as follows:
(1) Mr. Brown's driving, including his abrupt turn onto a dead-end street, which was an unusual way to go to Mr. Brown's home;
(2) Mr. Brown's unusual travel route from Torrington to Gillette using the interstate instead of Highway 85;
(3) Mr. Brown's bloodshot eyes;
(4) Mr. Brown appearing alert in the body cam video despite reporting that he was tired;
(5) Mr. Brown's unsupervised probation for possession of marijuana;
(6) Mr. Brown's demeanor change when he revoked his consent to search; and
(7) Mr. Brown "furtively" trying to make phone calls.
The district court made no findings about Corporal Spears possibly smelling marijuana.
[¶30] Mr. Brown argues that the district court erroneously considered circumstances related to Corporal Spears' initial concern that he might be driving impaired, because Corporal Spears dispelled that concern prior to returning Mr. Brown's identification. He also argues that the district court's finding that his demeanor changed when he revoked consent is clearly erroneous. According to Mr. Brown, the only facts available for consideration under a reasonable suspicion analysis were his probation status and his desire to speak with his friend or mother before deciding whether to allow the drug dog in the vehicle, facts which he contends do not establish reasonable suspicion. We acknowledged above that the district court could consider facts obtained and observations made during the initial traffic stop, and consequently we review each of the district court's findings for error.
*735 1. Bloodshot eyes, driving, and alertness
[¶31] Corporal Spears initially thought Mr. Brown's driving (swerving and abrupt turn) and bloodshot eyes could mean Mr. Brown was driving impaired. Corporal Spears testified that upon questioning Mr. Brown, other than his bloodshot eyes he did not notice anything else that might indicate that he was under the influence of alcohol or marijuana. Corporal Spears admitted that Mr. Brown's bloodshot eyes could be the result of the long drive from Torrington. The district court therefore improperly factored Mr. Brown's bloodshot eyes into its reasonable suspicion analysis. Damato , ¶ 16, 64 P.3d at 707 (explaining that "some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous").
[¶32] Mr. Brown's possible impairment was not Corporal Spears' sole concern. He testified that he was also concerned Mr. Brown was trying to conceal "something" (i.e., illegal activity) based on Mr. Brown's driving, including his abrupt turn onto a dead-end street after Corporal Spears caught up to him:
A. ... And then as I was catching up to [Mr. Brown's vehicle], it made a quick turn into the turning lane and hit its brakes and turned onto Arapaho, and that's where I conducted a traffic stop.
Q. And describe this quick turn. Did the vehicle signal for some distance and have its turn signal on before it made the turn, or --
A. I believe he just went into the turning lane, hit his brakes, and then as he was going in the turning lane, he turned on his signal.
Q. So it was an abrupt turn?
A. Yes. That's why I just -- I remember it as being a quick movement to the turning lane.
Mr. Brown's abrupt turn after Corporal Spears turned around and caught up to him could be viewed as an evasive maneuver raising suspicion of illegal activity. See, e.g. , Sutton , ¶ 24, 220 P.3d at 791 (acting evasive is a proper factor to consider in conducting a reasonable suspicion analysis). Corporal Spears also thought turning onto the dead-end street was inconsistent with Mr. Brown's statement that he was headed to his home:
A. Well, he told me he was just about home. So I asked him where his home was, where his residence was, and he said on Alex Way. I forget the numerics, but he stated on Alex Way, which is -- we were stopped just off of 59 on Arapaho. Alex Way is in Doud subdivision west of Highway 50 off of Force Road, and Arapahoe was a dead[-]end street, it's not a through street; so I thought that was kind of odd that he stopped there or turned on Arapaho.
"We have recognized that unusual or inconsistent travel plans are a proper consideration in a reasonable suspicion analysis." Feeney , ¶ 20, 208 P.3d at 56 (citing Flood v. State , 2007 WY 167, ¶¶ 30, 33, 169 P.3d 538, 547-48 (Wyo. 2007) ). Accordingly, the district court properly included Mr. Brown's abrupt turn onto a dead-end street and his improbable explanation he was on his way home in its reasonable suspicion analysis.[3]
2. Probation status
[¶33] Mr. Brown is correct that his probation status alone does not permit a warrantless search absent reasonable suspicion. See, e.g. , Nixon v. State , 2001 WY 15, ¶ 12, 18 P.3d 631, 636 (Wyo. 2001) ; Jones v. State , 2002 WY 35, ¶ 34, 41 P.3d 1247, 1257 (Wyo. 2002) ; United States v. Moore , 795 F.3d 1224, 1230 (10th Cir. 2015). However,
"[I]n conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus ." [
*736 United States v. ] White , 584 F.3d [935,] 951 [ (10th Cir. 2009) ] (quoting [ United States v. ] Santos , 403 F.3d [1120], 1132 [ (10th Cir. 2005) ] ) (emphasis in original). Although a person with a criminal record could not be pulled over or detained based on the record itself, such a record is one factor that may justify further detention and that may cast a suspicious light on other seemingly innocent behavior. See Santos , 403 F.3d at 1132 ("To be sure, this Court has held that a prior criminal history is by itself insufficient to create reasonable suspicion. People with prior convictions retain Fourth Amendment rights; they are not roving targets for warrantless searches. But in conjunction with other factors, criminal history contributes powerfully to the reasonable suspicion calculus." (internal citations omitted) ).
United States v. Simpson , 609 F.3d 1140, 1147 (10th Cir. 2010) (emphasis in original).
[¶34] In weighing Mr. Brown's probation status, the district court commented:
So the officer goes and does, as the officers usually do, run the license through dispatch, that kind of thing, and he comes up with the young man being on probation for possession of a controlled substance. And in and of itself that amounts to nothing. That does not factor into the analysis, and [the State] conceded that point. But, I do think it's legitimate for the officer to take that into account as he tries to plug in all of these other observations this officer is making.
[¶35] The record demonstrates that the district court did not consider Mr. Brown's probation status in isolation, but, instead, considered it along with other circumstances the district court considered as supportive of Corporal Spears' reasonable suspicion that Mr. Brown was trying to conceal illegal activity. In doing so, the court gave the factor little weight, and we find no error in its evaluation of this point.
3. Demeanor change and request to make phone calls
[¶36] Our precedent firmly holds that "[t]he failure to consent to a search cannot form any part of the basis for reasonable suspicion." Damato , ¶ 19, 64 P.3d at 708 (citation omitted) (emphasis added). This record is clear, and the State does not dispute, that Mr. Brown revoked his consent. Nonetheless, Corporal Spears testified, the State argued, and the district court found, not that the revocation of consent supported reasonable suspicion, but that Mr. Brown exhibited a change in demeanor when he revoked his consent, and that the purported change in demeanor supported Corporal Spears' reasonable suspicion that illegal activity had occurred or was occurring.
[¶37] At the suppression hearing, Corporal Spears testified that he perceived a change in Mr. Brown's demeanor after he accepted Mr. Brown's offer to allow a search:
Q. And he said you could give him a sobriety test and you could search his vehicle. Well, did you end up taking him up on the offer to search his vehicle?
A. I did. When he said -- when he said I could search it I said "Well, if you don't mind, if you'd step out of the car I'll just run the dog through the car. It will only take a couple minutes."
Q. And at that point did his demeanor change?
A. Yes, he said -- he hesitated, and he said he wanted to call somebody. So I asked him why he needed to call somebody and he made a comment, "It's not my car." He says his mom's car, he wanted to call his mom.
On cross-examination, Corporal Spears further explained Mr. Brown's "demeanor change:"
Q. How would you say his demeanor changed?
A. From going eagerly cooperative to uncooperative .
....
I might have used the wrong word by "demeanor." I don't know for sure what your definition is. I just mean from him being openly cooperative and "yes, you can," volunteering the information to now saying, "no, you can't and I want to leave."
*737 (Emphasis added.) Based on Corporal Spears' testimony, the district court found that:
... while failure to consent cannot provide the basis for a reasonable cause, I think the circumstances surrounding a retraction of consent, the demeanor change, can be taken into account. And I for sure noticed the demeanor change. In fact, I can't climb into the mind of this defendant, but it seems as soon as the word "dog" was mentioned, we had a demeanor change fairly quickly .... that can be taken into account in the officer's mind in determining whether or not there is a reasonable cause.
(Emphasis added.)
[¶38] After Corporal Spears requested that Mr. Brown exit the vehicle so that he could run his drug dog through it, the body cam video reflects that Mr. Brown hesitated to exit the vehicle, asked if he was free to leave, and expressed his desire to make a phone call to his friend or his mother concerning the situation. He did nothing more. Contrary to the district court's finding that his demeanor changed, the body cam video does not reflect any behavioral changes such as extreme nervousness or evasive eye contact that might be relevant to the district court's reasonable suspicion analysis. Sutton , ¶ 24, 220 P.3d at 791 (explaining that "factors such as acting evasive or breaking eye contact when asked certain questions can [ ] form the basis for reasonable suspicion"). Rather, the video reflects that Mr. Brown remained polite and respectful, maintained eye contact, and engaged in a dialogue with Corporal Spears in a consistent voice and tone throughout the encounter. Collectively, the evidence establishes nothing more than that Mr. Brown had a change of heart and revoked his consent to a search of the vehicle.[4]
[¶39] Mr. Brown's revocation of consent cannot be recast as a "demeanor change" so as to circumvent the well-established rule prohibiting the use of consent revocation as a basis to establish reasonable suspicion. Damato , ¶ 19, 64 P.3d at 708 ; United States v. Santos , 403 F.3d 1120, 1132 (10th Cir. 2005) (citing Florida v. Bostick , 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ) (explaining that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure"); United States v. Freeman , 479 F.3d 743, 749 (10th Cir. 2007) ("Refusal to consent to a search - even agitated refusal - is not grounds for reasonable suspicion."). The district court's finding that Mr. Brown's demeanor changed when he revoked his consent to search is clearly erroneous, see, e.g. , Daniel v. State , 2008 WY 87, ¶ 14, 189 P.3d 859, 864 (Wyo. 2008) ("A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."), and cannot support the district court's conclusion that Corporal Spears' had reasonable suspicion to further detain Mr. Brown.
C. Totality of Circumstances
[¶40] In its analysis, the district court did not discuss Corporal Spears' testimony that he thought he could smell a faint odor of marijuana. This is apparently because it found the reported scent should be afforded no weight, and if so we agree with that determination. Corporal Spears testified that he believed he smelled "a faint odor of marijuana, but because of the wind it was really difficult to distinguish." He further testified, "It might have been just a fraction of a second. And for me to say I would have P.C. off a plain smell from just that, was that what I smelled or not, I wouldn't go that far." Given Corporal Spears' candid unwillingness to commit to having smelled marijuana, the district court was correct in not relying on that testimony in its analysis.
[¶41] After we exclude from consideration the factors that the district court improperly included in its analysis, and the possible *738 smell of marijuana it properly omitted from its analysis, we are left with only three factors to support the continued detention of Mr. Brown: his abrupt turn on a dead-end street, travel inconsistent with his stated destination, and his probation status for possession of marijuana. Under our precedent, these circumstances, even considered in their totality, do not support a reasonable suspicion of illegal activity sufficient to extend the traffic stop.
[¶42] In Damato , the district court found reasonable suspicion of illegal activity in the following circumstances:
1) Damato seemed unusually nervous for a routine traffic stop;
2) Damato told the patrolman that the car was rented from San Francisco instead of San Diego, which is a known drug hub;
3) Damato said that he was taking the car home to Illinois when it was to be dropped off in Omaha;
4) Damato's luggage was in the back seat instead of the trunk;
5) many fast food wrappers on the passenger floorboard suggested Damato was on a "hard run"; and
6) Damato did not consent to the search which caused Patrolman Rettinger to suspect drugs.
Damato , ¶ 19, 64 P.3d at 708.
[¶43] As in the present case, we did not consider the defendant's refusal to consent to a search in the reasonable suspicion analysis. Id . Having done so, we concluded that the remaining factors were insufficient to constitute reasonable suspicion of illegal activity. Id. ¶ 26, 64 P.3d at 710. The circumstances here are no more compelling or supportive of reasonable suspicion. See also Barch v. State , 2004 WY 79, ¶ 11, 92 P.3d 828, 833 (Wyo. 2004) (no reasonable suspicion of illegal activity where defendant was unable to identify specific destination in city to which he was traveling, was carrying larger quantity of food than necessary for travel plans, was nervous and hurried, was unemployed making claimed vacation unlikely, and was from known drug hub). Indeed, even where we have upheld a finding of reasonable suspicion under circumstances that better supported the suspicion, it was a close case.
Although we acknowledge the evidence here is not overwhelming, the factors, including: the strong odor of a potential masking agent; the nervousness of the travelers; the inconsistency in the travelers' accounts of their trip and their relationship to one another and the boy; and the short turnaround time suggested nefarious, rather than innocent, conduct. We conclude, therefore, the totality of the circumstances established a reasonable suspicion to support further detention of Mr. Flood.
Flood , ¶ 35, 169 P.3d at 548.
[¶44] The district court's reasonable cause analysis centered on Mr. Brown changing his mind about consenting to a search, and an ephemeral and unquantifiable "change in demeanor." Once these are excluded from consideration, as they must be, the remaining circumstances offer weaker support than those in Damato , Barch , and Flood , and they do not add up to reasonable suspicion. Mr. Brown was therefore improperly detained for the dog sniff, and the resulting search violated his Fourth Amendment rights.
[¶45] Reversed and remanded for further proceedings consistent with this opinion.
BOOMGAARDEN, Justice, dissenting, in which KAUTZ, Justice, joins.
[¶46] Rather than use the lack of any specific finding about whether Corporal Spears smelled marijuana to support the reversal of Mr. Brown's conviction, we should uphold the general ruling of the district court "if supported by any reasonable view of the evidence." Feeney v. State , 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citation omitted). Corporal Spears testified that he believed he caught a whiff of something he thought smelled like marijuana. He stated he "thought [he] could smell a little bit of weed at one time, but the wind was blowing so hard, [he] kept trying to smell again and again, and [he] could never smell it a second *739 time."[5] Corporal Spears nevertheless was confident enough in his olfactory observation he believed that, together with other facts he gathered during the stop, the smell provided him with reasonable, articulable suspicion to conduct a canine sniff outside the car. On re-direct, Corporal Spears explained that had Mr. Brown not consented to a search of the car's interior, he intended to use Rocky to sniff around the outside of Mr. Brown's car.
[¶47] This is not a case in which we must determine whether the smell of marijuana, alone, provided probable cause to search. I found no precedent to suggest an officer must confirm he smelled marijuana, whether windy or not, before he can consider even a fleeting, faint smell as one factor that, when coupled with others, establishes reasonable suspicion to prolong a stop to conduct a canine sniff. To the contrary, we have previously considered the credible, unrefuted testimony of an officer who "thought" he smelled the odor of marijuana, albeit "briefly," when applying the totality of the circumstances test. Dimino v. State , 2012 WY 131, ¶¶ 17-22, 286 P.3d 739, 744-45 (Wyo. 2012) (finding the odor of marijuana alone to be sufficient to justify a prolonged detention but analyzing additional circumstances to conclude that all of the factors, together, justified the officer's reasonable suspicion). The law further instructs us to consider Corporal Spears' training, experience, and expertise (Corporal Spears and Rocky are a certified drug detection team) as part of the totality of the circumstances, Speten v. State , 2008 WY 63, ¶ 4, 185 P.3d 25, 28 (Wyo. 2008) (citations omitted), and to give appropriate deference to Corporal Spears' ability to distinguish between innocent and suspicious actions. Sutton v. State , 2009 WY 148, ¶ 11, 220 P.3d 784, 788 (Wyo. 2009) (citations omitted). Applying these standards, I would factor Corporal Spears' testimony concerning the faint smell of marijuana into the totality of the circumstances and affirm Mr. Brown's conviction.

Mr. Brown cited both the federal and state constitutions in his motion to suppress, but he did not provide a separate analysis of his rights under the Wyoming Constitution. We therefore limit our review to his federal constitutional claim. Kennison v. State , 2018 WY 46, ¶ 12 n.1, 417 P.3d 146, 149 n.1 (Wyo. 2018) (citation omitted).

On cross-examination, Corporal Spears testified:
Q. Now, on direct you stated that you believed that at one point in time you smelled marijuana, but it was really difficult?
A. It might have been just a fraction of a second. And for me to say I would have P.C. [probable cause] off a plain smell from just that, was that what I smelled or not, I wouldn't go that far.
On redirect, Corporal Spears further explained:
Q. At that point in time when you smelled marijuana, and the other factors that you took into account during the course of your encounter up to that point, did you believe that you had reasonable, articulable suspicion to go and obtain your dog to do a brief outside of the vehicle search?
A. Yes.
Q. And if your dog did not indicate on the vehicle, were you planning on searching, based upon your smell of the marijuana?
A. No, I would not have.
Q. Were you going to use the dog as a tool?
A. Yes.
Q. And the tool would be potential indication of controlled substances?
A. Yes. I figured if I caught just a whiff of something that I thought smelled like marijuana, the dog would hit it easy.

The district court found it unusual that Mr. Brown used the interstate to travel from Torrington to Gillette instead of using Highway 85. Corporal Spears did not ask Mr. Brown the reasons for his chosen route, and there may be innocent explanations for traveling the interstate instead of the highway. This circumstance is therefore innocuous. See, e.g. , Damato , ¶ 16, 64 P.3d at 707. The district court also considered the fact that Mr. Brown appeared alert despite his claimed fatigue. Because Corporal Spears did not cite that circumstance as contributing to his suspicion, we afford it no weight. Klomliam v. State , 2014 WY 1, ¶ 28 n.2, 315 P.3d 665, 673 n.2 (Wyo. 2014).

Mr. Brown's desire to call his friend or his mother was not "furtive" and cannot be excised from the overall conduct evidencing his revocation of consent. Accordingly, the district court improperly considered Mr. Brown's request to make phone calls as a separate circumstance indicative of reasonable suspicion.

The audio portion of Corporal Spears' body cam video confirms a stiff wind was blowing while Corporal Spears was talking with Mr. Brown.